Carr, J.
The only question which it is necessary to notice in this case, is, whether a county court in chancery can injoin the judgement of a superiour court of law? In support of this power, it was said, 1. that the terms of the law giving chancery jurisdiction to the county courts, are sufficiently broad to embrace it; and 2. that, in its exercise, there is nothing incongruous, because it is not an inferiour court reversing the judgement of an inferiour, but a court of equity viewing the controversy upon grounds of which the circuit court, being a court of common law jurisdiction only, from the nature of its powers, could take no notice. However true this last proposition may be, we must still consider *614 T1631'011 Power • did the legislature intend to give, and has it by the words of the statute given, to county courts, the power contended for?
We know that these tribunals are local; bounded, ih their general jurisdiction, by the limits of their county. Is this equity power an exception ? When a subsequent legislature uses the precise words of enactment used by a former, we must suppose that it uses them in the same sense. I have looked back to the revision of 1748, ch. 7. § 5. 5 Hen. Stat. at Large, p. 491. and I find the jurisdiction of the county courts thus expressed : “ The justices of every county court, or any four of them as aforesaid, shall and may take cognizance of, and are hereby declared to have power, authority and jurisdiction, to hear and determine all causes whatsoever, at common law, or in chancery, within their respective counties :” and these precise words we find used in all the laws since. In some of the later revisions are added, “ and all such other matters as by any particular statute is or shall be made cognizable therein.” The power, however, of injoining judgements of the superiour courts of law, is not claimed under any particular statute made since; but is rested on the general words of this statute of 1748. Did the legislature of that day mean to give this power? If we look to the words themselves, they seem to me clearly to restrict the exercise of the powers given, to the county— all causes at common law and in chancery within their respective counties.” It will be observed, that the common law and chancery jurisdiction are given in the same words; and we know well, that their common law powers were so restricted, that they could issue no process of any kind beyond the county: even if a party resided in the county when the suit was brought and judgement obtained, but moved to another county before execution issued, no execution of any kind, could, under the powers here given, reach him. To effect this, a particular statute was necessary; acts of 1748, ch. 12. § 20. Id. p. 536. which provides, “ that where judgement shall be obtained in any county *615 or other inferiour court of record, for debt or damages, and the person against whom such judgement shall be obtained, shall remove himself and his effects, or shall reside, out of the limits of the jurisdiction of such court, it shall be lawful for the clerk of the court where judgement was given, at the request of the party for whom the same was rendered, to issue any writ of fi. fa. or sa. sa. &c. and to direct the same to the sheriff of any county within this dominion, where the defendant or debtor or his goods shall be found.” And even this statute, because it mentioned only a fi. fa. and ca. sa. was considered to give no power to issue any other final process; and this defect was supplied by the act of 1772, ch. 5. 8 Hen. Stat. at. Largo, p. 516. the preamble of which runs thus : “ Whereas the laws concerning executions are defective, in not authorizing the clerks of county courts, to issue all manner of legal and proper writs of execution, upon judgements, decrees in chancery, and final orders, duly recovered and obtained in said courts, into other counties, as is done in writs of fi. fa. and ca. sa. &z.c.” This law (it may also be remarked) gives the power of issuing into other counties, attachments against executors, administrators or guardians, who shall fail to account, when ordered so to do, by such court; shewing that the genera! words were so strictly confined to the limits of the county, as not to confer this power so necessary to that equitable jurisdiction which every county court exercises over these fiduciaries. In Epes v. Randolph, 2 Call 186. the president, speaking of certain judgements, says, “ they were entered in July 1770, when an elegit could not issue upon them into any other county than York; and, therefore, in reason and justice, could only bind the lands in that county.” Thus, we see how strictly confined to the limits of their county, was the common law jurisdiction of these courts, given by the exact words which conferred on them chancery jurisdiction. By' what rule of construction can we extend them in this last case P I know of none. Look to the state of the courts, when this statute of 1748 passed ; and let us ask, upon what *616 ground of reason we can suppose, that the power to injoin the judgements of superiour courts of law, was meant to be given to county courts? There were none but county courts and the general court; and this last had a jurisdiction, both legal and equitable, covering the whole state, and express power is given to it to injoin judgements of the county courts. It could not, then, be imagined, that the county courts could injoin the judgements of the general court, the only superiour court then in being. As this law, therefore, in its origin, gave no such power, it seems to follow, that the same words, the same law, continued down to us, must mean the same thing now that it did at first. This seems to me decisive of the question.
This view is certainly strengthened by the general understanding and practice of the country: for though, in a few cases, we have heard of this power being exercised, it was always looked upon as an extraordinary attempt; and the only case in which I have ever known it carried to a superiour court, was one in the superiour court of chancery of Clarksburg, which decided against the power. But if it had been the general belief of the bar through the country, that the county courts had this power, such were the temptations, from the convenience and the facility of those tribunals, that we should have had a thousand instances of such injunctions.
Again, we know that a chancery court never grants an injunction without directing bond and security. Thus, in the -chancery court law, it is said, that where an injunction shall be granted, the clerk shall indorse on the subpána that the effect thereof shall be suspended until the party obtaining the same, shall give security in the office of the court in which the judgement, to be injoined, shall have been obtained. This is the law of the superiour courts of chancery, who having jurisdiction to injoin the judgments of many law courts, it was necessary to designate where the bond should be given $ and it is confined to the law court whose judgement was injoined. But when the law speaks of the *617 power of the county courts to grant injunctions, it says, before an injunction shall issue, the party shall give bond and security, in the clerk’s office, viz : of the county court granting the injunction. Why is this difference ? Why can it be, but that the county court having power to injoin its own judge-meats only, when bond is given in its office, it must perforce be given in the office of the court, in which the judgement to be injoined was obtained ?
Other views taken from different clauses of the statutes, crowd upon me, shewing to my mind with equal clearness, that the legislature never dreamed of the county courts possessing this power; but I forbear to quote them. Though this point has never been brought directly before this court, I think it is clear from what was said in Cocke v. Pollock, 1 Hen. &c Munf. 514. 518. that the court had no idea of such a power in the county courts. Judge Roane, in discussing the point that the location of the court whose judgement was injoined, fixed the jurisdiction, says, “ Prior to the establishment of this new system, the high court of chancery, could have granted injunctions to any judgement rendered within the limits of its jurisdiction; and this is now also the case with the several county courts in chancery, who grant injunctions to their own judgements, without inquiry, in either case, as to the residence of the defendant.” And judge Fleming says, “ Suppose that this suit instead of having been brought in the district court of Charlottesville, had been in the county court of Albemarle, which is held at the same place, and the defendant had shewn good equitable cause for injoining the judgement, could not that county court with propriety, have injoined the judgement, without regard to the residence of Pollock ?” Now, why suppose the case brought in the county court, in order to predicate its power to injoin, if it could injoin the judgement of the district court held at the same place?
I am clear, upon the whole, that the judgement of the court below should be affirmed.
*618 Cabell, J. If it had pleased the legislature to confer .... power on the county courts, to injom the judgements of the superiour courts of law, I should see nothing in such a jurisdiction, inconsistent with the deference and submission due from an inferiour to a superiour court. For, in the exercise of this power, the county courts would act on grounds totally distinct from those which had been the foundation of the judgements of the superiour courts of law; the county courts acting solely on the equity, while superiour courts had acted only on the law of the case. But a careful examination of the various statutes ha’s convinced me, that it was not the intention of the legislature, to give to the county courts any such power over the judgements of the superiour courts. I am for affirming the judgement.
Brooke, J. concurred.
Tucker, P. I do not think it necessary to say any thing on the first point argued at the bar, in addition to what I said in Epes’s adm'r v. Dudley, in regard to the obligation of a court of law to respect the process of a court of chancery, and to refuse its assistance to a party who is in the commission of a contempt of a coordinate branch of the judiciary.
It is sufficiently obvious, however, that if a county court has no power to injoin the judgement of a superiour court, there can be no obligation in the latter to respect its process of injunction. The question then to be decided, is, has it such a power? I conceive it has not.
I do not mean to deny, that a county court may entertain jurisdiction of a cause on the chancery side of that court, although a judgement at law has been rendered in the superiour court between the same parties, and proceed to make a final decree perpetually hjoining the plaintiff at law from proceeding to enforce his judgement. Thus, if a party resident in Henrico, recovers a judgement on bond in the circuit court of that county, it cannot be denied, that *619 the obligor may institute his suit in equity on the chancery side of the county court, alleging that the bond was giveu for usury or gambling, and so of no validity; and if such fact he established, 1 cannot doubt that the county court might by its final decree, after a full hearing of the parties, perpetually injoin the plaintiff at law from farther proceeding. For by the statute, 1 Rev. Code, ch. 71. $ 7. the county court has general jurisdiction over all matters in equity within its jurisdiction; and thus has power to take cognizance of, and by consequence to pronounce the proper decree between, the parties in the cause. And in doing so, it would neither conflict with the power of the court of law, nor overrule its judgements. Its action would be in a different sphere, and its decision would be upon the equity between the parties, while the court of law had decided only upon the law of the case, as contradistinguished from its equity. These principles are too familiar to be dilated upon. Indeed, if they do not reconcile the action of the inferiour tribunal upon the matter of equity, with the action of the superiour upon the matter of law, it would be difficult to conceive, how the coequal tribunal of the superiour eourt of chancery can be justified in its assumption of equitable jurisdiction to arrest the judgement of the law courts, and that too after they have received the sanction of this tribunal superiour to them all. ■
But though a county court may, in a suit in equity, make a final decree perpetually injoining the judgement of a circuit court of law, yet it does not follow that it has the right to issue, at the commencement of a suit in equity, its process of injunction, restraining the plaintiff at law from proceeding, until the merits of the case shall have been heard. This, though an ordinary power of a court of equity, and incidental to the equitable jurisdiction which it exercises, does not exist, I think, as between the county and the superiour courts : it does not exist so as to authorize the county courts to injoin any other than their own judgements, though *620 there can be no question of their power over them,. I draw l^'s >nference from the following considerations.
The power to grant injunctions to judgements at law, has been regulated by the statute law of Virginia, for more than three fourths of a century (to go no farther back); acts of. 1744, ch. 11. <§> 6. 1748, ch. 8. <§> 9. 5 Hen. Stat. at Large, pp. 241. 512. By these early provisions, it was generally declared, that before any injunction in chancery should be granted to stay proceedings at law, in any action, suit or judgement whatsoever, bond with good security should be given for the payment of the demand in case of the dissolution of the injunction. This principle, it is believed, has been steadfastly adhered to by the legislature, although in subsequent statutes, it has changed its form, from a general provision to a specific enactment as to each particular court. Thus, by the act of October 1787, ch. 9. <§> 4. 12 Hen. Stat. at Large, p. 467. concerning the court of chancery, it is provided that on all subpoenas of injunction awarded by that court, the clerk shall indorse that the effect of it is suspended until bond and security be given in the office of the court where the judgement was given; thus embracing all courts of law whether superiour or inferiour. In the year 1792, moreover, two other provisions are found as to this matter; the one as to the district courts, and the other as to the county courts. By the district court law, (1 Old Rev. Code, ch. 66. <§>11. Pleasants’s edi. p. 74.) it was provided, that the district courts, and the judges in vacation, should have the powers of the chancery court and of the chancellor, in injoining their own judgements, under the same rules and regulations as were prescribed for the court of chancery ; that is to say, inter alia, upon the terms of requiring bond with security before their injunctions should have effect. And in the county court law of 1792 (Id. ch. 67. <§> 68. p. 92.) there was a provision as to injunctions, but limited and confined to injunctions to their own judgements. Until now, the provision had been general,- but the legislature having vested this jurisdiction by *621 way of injunction in the district courts, there would have been no longer any sort of necessity for assuming the jurisdiction by the county courts, if they had been ever supposed to have had it. The clause of the county court law of 1792, therefore, looks only to this limited power of granting injunctions. It provides that before any injunction shall be granted to stay proceedings at law in any action, suit or judgement whatsoever, in any county or corporation court, the bill shall be verified by affidavit, and injunction bond and security given in the cleric's office ; that is, the office of the clerk of the court awarding the injunction. And such, to this day, is the precise extent of the provision of the law on this subject; 1 Rev. Code, ch. 71. § 75. which is an exact transcript from the statute of 1792. This is the only clause requiring or prescribing security in county court injunctions. There is no section of the law, requiring such security to he given in injunctions awarded by a county court to the judgement of the superiour courts; nor is the case comprehended by any clause of this or any other statute whatsoever; a pregnant proof, I conceive, that such power to injoin the judgement of a superiour court, was not only never designed to be conferred, but is to be regarded as excluded, because no provision has been made for the manner in which it shall be exercised.
The legislative understanding of this matter is further evinced by the 62nd section of the county court law, 1 Rev. Code, ch. 71. which provides, that “Whenever an injunction shall bo obtained in any county or corporation court, to stay proceedings at law upon a judgement of such court f process may issue against such defendant or defendants as do not reside within the said county; whereas no provision is made for the case of an injunction to the judgement of a circuit court.
The opinion of the judges of the general court also, in the case of Hite v. Fitz Randolph, although not authoritative, is certainly entitled to the highest respect. And, lastly, the very general impression of the profession against the ex *622 istence of this power in the county court, if it affords no . . r , . . r . , , . guide lor our decision, furnishes at least an assurance, that the practice has been too rare and too circumscribed, to render it dangerous or inconvenient to interfere with it. The possession of chancery powers by the circuit courts, under the present system of our courts, will render the appeal to the county courts for relief against judgements of the circuit courts, less than ever necessary; and it is probable, that even if the judgement of this court did not deny the power, we should never hereafter hear of its exercise.
Judgement affirmed.